# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| KIMBERLY KRAUSE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 07 C 5329 |
| | ) | |
| TURNBERRY COUNTRY CLUB, JMB | ) | Judge Virginia M. Kendall |
| GOLF SHOP, INC., and JEFFREY | ) | |
| BUTTITTA, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Kimberly Krause ("Krause") filed suit against Defendants Turnberry Country Club ("Turnberry"), JMB Golf Shop, Inc. ("JMB"), and Jeffery Buttitta ("Buttitta") alleging various claims related to unwelcome conduct by Buttitta towards Krause. This action involves the following claims: (1) sexual harassment in violation of Title VII against Turnberry (Count VI[1]); (2) violation of the Illinois Human Rights Act against Turnberry (Count VII); (3) assault and battery against Turnberry (Count VIII); (4) false imprisonment against Turnberry (Count IX); (5) intentional infliction of emotional distress ("IIED") against Turnberry (Count X); (6) sexual harassment in violation of Title VII against JMB (Count XI); (7) violation of the Illinois Human Rights Act against JMB (Count XII); (8) assault and battery against Buttitta (Count XIII); (9) false imprisonment against Buttitta (Count XIV); and (10) IIED against Buttitta (Count XV). Turnberry moves to dismiss the Complaint as against Turnberry pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1). For the reasons stated herein, Turnberry's motion to dismiss is denied.

---

[1] While the Complaint contains ten claims, Krause labels and refers the claims as Counts IV - XV rather than Counts I through X. The Court will refer to the claims as numbered in the Complaint.

Krause worked for Turnberry in its golf pro shop as a merchandise assistant from March 2005 through August 15, 2006. (Compl. § VI, ¶¶ 1-2.) Turnberry provided Krause with business cards that identified her as the merchandise assistant in the golf pro shop and as a Turnberry employee. (Compl. § VI, ¶ 4.) In addition, Krause received bonuses and other compensation from Turnberry. (Compl. § VI, ¶ 5.) Turnberry also employed Buttitta, who worked as Turnberry's head golf pro and in Turnberry management. (Compl. § V, ¶¶ 4, 6(a).[3]) In addition to his work for Turnberry, Buttitta also owned and operated JMB and conducted business at Turnberry through JMB. (Compl. § V, ¶ 7; Compl. § VI, ¶ 6.) JMB also employed Krause and/or held Krause out as its agent, employee, and/or servant. (Compl. § V, ¶ 6(b).) Buttitta directly supervised Krause in his capacity with Turnberry and with JMB and acted on behalf of Turnberry in his management and supervision of Krause. ( Compl. § V, ¶¶ 8-9; Compl. § VI, ¶¶ 6, 8)

During her employment with Turnberry, Buttitta continuously made unwelcome sexual advances, requests for sexual favors, and physical contact to and with Krause. (Compl. § VI, ¶¶ 9-11.) This conduct included asking Krause what type of underwear she wore, requesting to see Krause's tan lines, telling Krause that he bought his wife a sex toy, asking Krause to engage in phone sex, staring at Krause's chest and legs, and inviting Krause on a trip to Florida. (Compl. § VI, ¶ 11.) Krause reported these incident to various Turnberry employees, including the General

---

[2] Krause divided the Complaint into multiple sections and reset the numbering of paragraphs contained within each section. For instance, Section I, titled "Introduction," contains two paragraphs numbered paragraph 1 and paragraph 2. Section II, titled "Jurisdiction," contains eight paragraphs numbered as paragraphs 1 through 8. For the sake of clarity, all citations to the Complaint contain the section number and paragraph number under the particular section cited.

[3] Section V contains two paragraphs labeled paragraph six. The Court will refer to these paragraphs as paragraph 6(a) and paragraph 6(b).

Manager, two assistant Turnberry golf pros, and a ladies' locker room attendant. (Compl. § VI, ¶¶ 14-20.) Nevertheless, Buttitta continued to engage in the unwelcome conduct. (Compl. § VI, ¶ 17.)

On August 15, 2006, Krause terminated her employment with Turnberry as a result of the "intimidating, hostile and offensive work environment" created by Buttitta's conduct. (Compl. § VI, ¶ 21.) Upon announcing her departure, Buttitta pulled Krause into his office against her will, shut the door, and told her she was committing "career suicide." (Compl. § VI, ¶ 22; § VIII, ¶ 14; § IX, ¶ 14.)

On June 7, 2007, Krause filed a written charge with the Equal Employment Opportunity Commission ("EEOC"), alleging sexual harassment and constructive discharge. (Compl. § III, ¶ 1). The EEOC issued Krause a right-to-sue letter on June 26, 2007. (Compl. § III, ¶ 2.) Krause filed this Complaint on September 20, 2007, within ninety days after receiving a right-to-sue letter. (Compl. § III, ¶ 3.)

## STANDARD

When considering a motion to dismiss under Rule 12(b)(6), a court must accept as true all facts alleged in the complaint and construe all reasonable inferences in favor of the plaintiff. *See Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir. 1995). To state a claim upon which relief can be granted, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A plaintiff need not allege all facts involved in the claim. *See Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994). However, in order to survive a motion to dismiss for failure to state a claim, the claim must be supported by facts that, if taken as true, at least plausibly suggest that the plaintiff is entitled to

relief.  *See Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007).  Such a set of facts must

"raise a reasonable expectation that discovery will reveal evidence" of illegality.  *Id.* at 1965.

## DISCUSSION

Turnberry moves to dismiss Counts VI through X.  With respect to Counts  VI and VII,

Turnberry contends that Krause failed to sufficiently allege that she had an employment relationship

with Turnberry or, alternatively, that she failed to demonstrate that she exhausted her administrative

remedies.  With respect to Counts VIII through X, Turnberry asserts that the claims  are preempted

by the Illinois Human Rights Act or, alternatively, that Turnberry may not be held liable for

Buttitta's conduct under a *respondeat superior* theory of liability.  For the reasons stated below, the

Court denies Turnberry's Motion to Dismiss.

## I.  Violations of Title VII and the Illinois Human Rights Act (Counts VI-VII)[4]

Turnberry contends that the Complaint fails to state a claim under Title VII (Count VI) and

the Illinois Human Rights Act ("IHRA") (Count VII) because Krause has failed to sufficiently allege

an employer-employee relationship or, alternatively, to demonstrate that she exhausted her

administrative remedies.   For the reasons set forth below, the Court denies Turnberry's Motion with

respect to Counts VI and VII.

### A.  *Employer-Employee Relationship*

In general, an employee can only bring a Title VII claim against the employee's employer.

---

[4]  Krause filed extrinsic information in support of response to Turnberry's motion to dismiss.  Both parties rely
on this information in support of their respective positions regarding Turnberry's motion.  The purpose of a motion to
dismiss is to test the sufficiency of the complaint under the applicable pleading standard, not to decide the merits of the
challenged claims.  *Weiler v. Household Fin. Corp.*, 101 F.3d 519, 524 n.1 (7th Cir. 1996) (*citing Triad Assocs., Inc.
v. Chicago Hous. Auth.*, 892 F.2d 583, 586 (7th Cir. 1989)).  Because the submission of facts outside the allegations of
the complaint is improper under Federal Rule of Civil Procedure 12(b)(6), the Court has elected to ignore this
information rather than convert the motion to one of summary judgment under Federal Rule of Civil Procedure 56.  *See
Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1248 (7th Cir. 1994).

*See* 42 U.S.C. § 2000e-2(a). Under Title VII, an employee is defined as "an individual employed by an employer." 42 U.S.C. § 2000e(f). To determine whether a plaintiff was an employee of the defendant employer, the Seventh Circuit employs a five-factor test based on common-law principles of agency. *Hojnacki v. Klein-Acosta*, 285 F.3d 544, 549 (7th Cir. 2002) (*citing Alexander v. Rush N. Shore Med. Ctr.*, 191 F.3d 487, 492 (7th Cir. 1997)). The test requires courts to consider the following factors: (1) the extent of the employer's control and supervision over the worker; (2) the kind of occupation and nature of skill required; (3) which party has responsibility for the costs of operation, such as the provision of equipment and supplies and the maintenance of the workplace; (4) the source of payment and benefits; and (5) the duration of the job. *Id.* at 550. Of the five factors, the extent of control and supervision over the worker is considered the most significant when determining employment status. *Id.* In addition, as a prerequisite to considering whether an individual is an employee under common-law agency principle, some courts also require the individual to "have been hired in the first instance" by and to have received a financial benefit from the purported employer. *Gulino v. New York State Educ. Dep't*, 460 F.3d 361, 372 (2d Cir. 2006); *see also Graves v. Women's Prof'l Rodeo Assoc.*, 907 F.2d 71, 74 (8th Cir. 1990); *Henderson v. YMCA,* 05-3179, 2005 U.S. Dist. LEXIS 30427, at *2-3 (C.D. Ill. Nov. 18, 2005). Turnberry contends that Krause failed to allege that Turnberry hired and compensated Krause or, alternatively, that the allegations establish that Krause was employed by JMB rather than Turnberry. Neither argument supports dismissal at this juncture.

First, Turnberry asserts that the Court should not apply the five-factor common-law test because Krause failed to even allege that she was hired by or received compensation from Turnberry. Assuming for the sake of argument that these two elements are prerequisites to finding

5

an employer-employee relationship within the Seventh Circuit, the Complaint contains allegations from which one could reasonably infer both elements. While Krause does not use the word "hire," she alleges that she began working for Turnberry in March 2005 as a merchandise assistant in its golf pro shop and remained in that position until August 15, 2006. (Compl.§ VI, ¶¶ 1-2.)) Krause also alleges that Buttitta was employed by Turnberry as its head golf pro, served in Turnberry management, and supervised Krause on behalf of Turnberry. (Compl. § VI, ¶¶ 6-8.) In addition, Krause specifically alleges that she "received bonuses and other compensation from Defendant Turnberry Country Club." (Compl.§ VI, ¶ 5.) Thus, Krause provide sufficient factual allegations to plausibly suggest that she was hired by and received compensation from Turnberry.

Krause also provides sufficient allegations to state a plausible entitlement to relief under the common-law test. Specifically, Krause alleges, among other things, that: (1) she worked for Turnberry as merchandise assistant; (2) she held this position from March 2005 through August 15, 2006; (3) Turnberry provided Krause with business cards identifying her position and identifying her as an employee of Turnberry; (4) Krause "received bonuses and other compensation" from Turnberry; (5) Buttitta directly supervised Krause in his capacity as a Turnberry employee; (6) Turnberry employed Buttitta as its head golf pro; (7) Buttitta worked in Turnberry management; and (8) Buttitta acted on behalf of Turnberry in his management and supervision of Krause. Such allegations, which speak to the first, second, fourth, and fifth factors articulated above, are sufficient to stave off dismissal under Rule 12(b)(6).

Finally, the Court notes that Krause has not pled himself out of court by including allegations regarding her "employment" with JMB. In addition to Krause's allegations regarding Turnberry, Krause also alleges that she was employed by JMB, that Buttitta owned JMB, and that Buttitta also

directly supervised Krause in his capacity with JMB.  (Compl. § V, ¶¶ 6-7, 9.)  Turnberry asserts that these allegations establish that JMB, not Turnberry, was Krause's "employer."  Whether a defendant is considered a plaintiff's employer is a factual determination based upon the five-factor test articulated above.  Accepting all factual allegations as true and construing all reasonable inferences in favor of the plaintiff–as the Court must at this stage–Krause's allegations create a plausible theory that Turnberry employed Krause during the relevant period.  According the Complaint, Krause began working for Turnberry as a merchandise assistant in March 2005, Turnberry conferred to Krause a financial benefit, and Turnberry exercised at least some degree of control and supervision over Krause.  Krause's factual allegations regarding Turnberry extend beyond the mere legal conclusions.  If discovery reveals that Krause was not in an employee-employer relationship with Turnberry, then Turnberry will be able to move for summary judgment on such basis.  At this time, however, Krause has provided sufficient allegations to plausibly suggest that Turnberry employed Krause.

B.  *Exhaustion of Administrative Remedies*

Before a plaintiff may assert a claim under Title VII in federal court, she must file a timely charge with the EEOC detailing the discriminatory conduct and receive authorization from the EEOC to file a civil action (called a right-to-sue letter).  42 U.S.C. § 2000e-5(b), (f); *Conner v. Ill. Dep't Nat. Res.*, 413 F.3d 675, 680 (7th Cir. 2005).  After the plaintiff files a timely charge with the EEOC, the statute provides that the EEOC "shall" investigate the charge and make a reasonable cause determination no later than 120 days from the filing of the charge.  42 U.S.C. § 2000e-5(b).  The statute also directs the EEOC to issue the right-to-sue letter if it dismisses the charge or 180 days have elapsed from the filing of the charge and the EEOC has not entered into a conciliation

agreement or filed a civil action. 42 U.S.C. § 2000e-5(f)(1). Once right-to-sue notice is given, the aggrieved party has 90 days to institute suit. *Id.* The EEOC has also promulgated a regulation[5] that permits the EEOC to issue an early right-to-sue letter before 180 days has elapsed if: (1) the aggrieved party submits a written request for the early notice, and (2) an appropriate EEOC official determines "that it is probable that the Commission will be unable to complete its administrative processing of the charge within 180 days from the filing of the charge and has attached a written certificate to that effect." 29 C.F.R. § 1601.28(a)(2).

In the present case, Krause alleges that she filed a charge with the EEOC on June 7, 2007 and that the EEOC issued Krause an early right-to-sue letter on June 26, 2007, nineteen days after she filed the charge. (Compl. § III, ¶¶ 1-2.) Krause did not attach the right-to-sue letter or written certification issued pursuant to 29 C.F.R. § 1601.28(a)(2) to her Complaint. In light of these allegations, Turnberry submits three arguments in support of his position that Krause failed to exhaust her administrative remedies before filing the current action.

First, relying on 29 C.F.R. § 1601.28(a)(2), Turnberry contends that Krause failed to allege that the EEOC provided her with the required written certification pursuant to 29 C.F.R. § 1601.28(a)(2). A party's failure to exhaust her administrative remedies in an affirmative defense. *Salas v. Wis. Dep't of Corr.*, 493 F.3d 913, 921-22 (7th Cir. 2007). Consequently, "[a] complaint may not be dismissed for merely failing to rebut an affirmative defense; 'dismissal is only appropriate if a plaintiff pleads herself out of court by alleging facts that affirmatively establish the defense.'" *Hucko-Haas v. Bd. of Trs.*, No. 07 C 0495, 2008 U.S. Dist. LEXIS 13949, at *18 (N.D. Ill. Feb. 22, 2008) *(quoting Waldron v. Dugan*, No. 07 C 286, 2007 U.S. Dist. LEXIS 91514, at *14

---

[5] Title VII authorizes the EEOC to "issue, amend, or rescind suitable procedural regulations to carry out the provisions of this chapter." 42 U.S.C. § 2000e-12(a).

(N.D. Ill. Dec. 13, 2007)).  In the present case, Krause has not effectively "plead[ed] herself out of court."  To the contrary, Krause provides sufficient allegations to establish at the Rule 12(b)(6) stage that she fulfilled the preconditions to filing a civil action: (1) Krause filed a charge with the EEOC on June 7, 2007, asserting sexual harassment and constructive discharge; (2) the EEOC subsequently issued her a right-to-sue letter on June 26, 2007; and (3) Krause filed the Complaint within 90 days of receiving the right-to-sue letter, alleging sexual harassment and constructive discharge,  (Compl. § III, ¶¶ 1-3.).  *See Conner*, 413 F.3d at 680 (to bring a Title VII claim, the plaintiff must timely file a charge, receive a right-to-sue letter, and assert claims within the scope of the charges filed with the EEOC.  Turnberry does not cite to any legal authority in support of its position that Krause was required to allege anything further, nor is this Court aware of any such precedent.  Thus, Krause's failure to allege receipt of the written certification is not grounds for dismissal.

Second, Krause urges the Court to dismiss the Complaint because Krause did not attach the right-to-sue letter or written certification to her Complaint.  This omission is not fatal.  "Although Title VII requires that a claimant be notified of her right-to-sue before filing a complaint, it does not state any requirement that a plaintiff attach the right-to-sue letter to her complaint."  *See Raymond v. City of Chicago*, 183 F. Supp. 2d 1060, 1066 n.3 (N.D. Ill. Feb. 6, 2002); *see also Frazier v. Harris*, 266 F. Supp. 2d 853, 874-75 (N.D. Ill. 2003).  Consequently, Turnberry's second argument in support of dismissal for failure to exhaust administrative remedies also fails.  *See Patterson v. County of Cook,* No. 01-C-9557, 2003 U.S. Dist. LEXIS 17588, at * 11 (N.D. Ill. June 17, 2003) ("The requirement that a plaintiff file EEOC charges before filing suit is not intended to erect elaborate pleading requirements or allow form to prevail over substance.").

Finally, Turnberry contends that, because the EEOC issued Turnberry a right-to-sue letter

within nineteen days after Krause filed her charge, the EEOC "failed in its statutory duty to investigate Krause's claims." (Turnberry Mem. 7.) As noted above, the failure to exhaust administrative remedies is an affirmative defense rather than a jurisdictional prerequisite. The Court has already concluded that Krause's allegations are sufficient to survive dismissal for failure to exhaust administrative remedies at the Rule 12(b)(6) stage. Nevertheless, the Court notes that, even if it were to consider Turnberry's final argument, it would not warrant dismissal of Counts VI and VII.

Turnberry asserts two arguments in support of his position that the EEOC failed to investigate Krause's claims. First, the issuance of a right-to-sue letter prior to the expiration of the 180 day period set forth in § 2000e-5(f)(1) is invalid as in conflict with Title VII. Second, the issuance of a right-to-sue letter in this case, occurring nineteen days after Krause filed a charge with the EEOC, is invalid as inconsistent with Title VII. As discussed above, Title VII authorized the EEOC to issue a right-to-sue letter when the EEOC either dismisses the charges filed or if, within 180 days from the filing of the charge, the EEOC has not filed a civil action or entered into a conciliation agreement. 42 U.S.C. § 2000e-5(f)(1). In addition, an EEOC regulation permits early issuance of a right-to-sue letter upon request if an appropriate EEOC official determines "that it is probable that the Commission will be unable to complete its administrative processing of the charge within 180 days from the filing of the charge and has attached a written certificate to that effect." 29 C.F.R. § 1601.28(a)(2). Relying on a purported disparity between 42 U.S.C. 2000e-5(f)(1), which authorizes the EEOC to issue a right-to-sue letter if it has not filed a civil action within 180 days from the filing of the charge, and 29 C.F.R. § 1601.28(a)(2), which permits the EEOC to issue a right-to-sue letter within the 180-day period if the EEOC determines that it is probable that it will

not be able to complete its investigation within the period, Turnberry contends that 29 C.F.R. § 1601.28(a)(2) is invalid because 180 days must pass before a right-to-sue letter may be issued.

Courts have engaged in much discussion regarding the validity of 29 C.F.R. § 1601.28(a)(2). *See King v. Dunn Mem'l Hosp.*, 120 F. Supp. 2d 752, 755 (S.D. Ind. 2000) (collecting cases). While the Seventh Circuit has yet to address the issue, other circuits are split as to whether the EEOC may issue early right-to-sue letters. The Ninth Circuit, Tenth Circuit, and Eleventh Circuit have upheld 29 C.F.R. § 1601.28(a)(2) against similar challenges. *See Walker v. United Parcel Serv.*, 240 F.3d 1268, 1277 (10th Cir. 2001); *Sims v. Trus Joist MacMillan*, 22 F.3d 1059 (11th Cir. 1994); *Brown v. Puget Sound Elec. Apprenticeship & Training Trust*, 732 F.2d 726 (9th Cir. 1984). The District of Columbia Circuit adopted a contrary position, which Turnberry urges this Court to adopt. *See Martini v. Fed. Nat'l Mortgage Ass'n*, 178 F.3d 1336, 1340-48 (D.C. Cir. 1999).

Several courts in this district have also had occasion to address the validity of 29 C.F.R. § 1601.28(a)(2) and early right-to-sue letters issued pursuant to the regulation. An overwhelmingly majority (if not all) of these court have upheld the regulation. *See Maple v. Pub'ns Int'l, Ltd.*, No. 99 C 6936, 2000 U.S. Dist. LEXIS 637, at *4-9 (N.D. Ill. Jan. 21, 2000); *Berry v. Delta Air Lines, Inc.*, 75 F.Supp.2d 890, 890-93 (N.D. Ill. 1999); *Baker v. Gardner, Carton & Douglas*, No. 97 C 2649, 1997 U.S. Dist. LEXIS 20002, at *4-5 (N.D. Ill. Dec. 12, 1997); *Martinez v. Labelmaster,* No. 96 C 4189, 1996 U.S. Dist. LEXIS 14789, at *3-17 (N.D. Ill. Oct. 4, 1996); *Rolark v. Univ. of Chicago Hosp.*, 688 F. Supp. 401, 402-04 (N.D. Ill. 1988); *see also  King*, 120 F. Supp. 2d at 754-59*; Horne v. Schult Homes Corp.*, No. 3:99-CV-0321RM, 1999 U.S. Dist. LEXIS 22046, at *5-21 (N.D. Ind. Sept. 10, 1999). This Court agrees with the reasoning presented in those cases and adopts the approach taken by other courts within the Northern District, as well as the Ninth, Tenth, and

Eleventh Circuits. As such, the Court concludes that 29 C.F.R. § 1601.28(a)(2) is not invalid as in conflict with Title VII.

Even if an early right-to-sue letter is not invalid *per se*, Turnberry contends that Krause's early right-to-sue letter is invalid because the EEOC issued the letter within nineteen days after Krause filed her charge. According to Turnberry, the EEOC violated its statutory obligation to investigate because it could not have adequately investigated the charge in the nineteen day period. As such, Turnberry urges the Court to remand Krause's claim to the EEOC. In support of this argument, Turnberry relies primarily of *Simler v. Harrison County Hospital*, 110 F. Supp. 2d 886 (S.D. Ind. 2000). In *Simler*, the EEOC issued a right-to-sue letter to the charging party within fifteen days after the charge was filed. The *Simler* court remanded the plaintiff's Title VII claim to the EEOC after concluding 29 C.F.R. 1601.28(a)(2) is invalid as contrary to 28 U.S.C. § 2000e-5(b), at least to the extent that the EEOC did not actually investigate the charge prior to issuing the right-to-sue letter. 110 F. Supp. 2d at 890. The *Simler* court also rejected the conclusion reached in *Berry v. Delta Air Lines, Inc.*, 75 F.Supp.2d 890, 892 (N.D. Ill. 1999), that an EEOC official's determination that an early right-to-sue letter is warranted complies with the investigation mandate set forth in 28 U.S.C. § 2000e-5(b). *Id.* at 889-90.

The Court declines to adopt the *Simler* approach for a number of reasons. First, implicit in the Court's conclusion that an early right-to-sue letter is not *per se* invalid is its position that the regulation at issue balances the limited resources of the EEOC with its expanding responsibility; the regulation "simply recognizes that the caseload will sometimes be so heavy that it can be determined early on that no action can be taken within 180 days and the issuance of an early right-to-sue letter is a reasonable implementation of the Act." *Rolark*, 688 F.Supp. at 404. More importantly, 29

C.F.R. § 1601.28(a)(2) does not allow for "the wholesale abandonment of the EEOC's mandate" to investigate, as set forth in 42 U.S.C. § 2000e-5(b). *Berry*, 75 F. Supp. 2d at 892. To the contrary, the regulation conditions any issuance of an early right-to-sue letter upon a determination by the appropriate EEOC official that the EEOC will not complete administrative processing of the charge within 180 days. 29 C.F.R. § 1601.28(a)(2). Unlike the *Simler* court, this Court finds persuasive the *Berry* court's conclusion that the determination by an EEOC official satisfies 42 U.S.C. § 2000e-5(b)'s investigation mandate. *Berry*, 75 F. Supp. 2d at 892. As noted in *Berry*,

> [The] determination by an appropriate Commission official that it is probable that the EEOC will not complete the administrative processing of the charge within 180 days. . . is equivalent to a finding that a right-to-sue letter is likely to issue in any event. . . . Where further investigation or conciliation is unlikely to prevent a right-to-sue letter from being issued (perhaps because the EEOC's workload prohibits many investigations from being completed within 180 days), the regulation allows the EEOC to move on to the next case. In light of the EEOC's expertise in administering the statute, this is a permissible interpretation of its obligations under Title VII.

*Id.* at 892-93 (internal citations omitted); *see also King*, 120 F. Supp. 2d at 758; *Maple*, 2000 U.S. Dist. LEXIS 637, at *7-8. Finally, the *Simler* approach is also problematic because it creates additional issues and invites litigation regarding the degree and amount of investigation required of the EEOC to satisfy the statutory mandate. *King*, 120 F. Supp. 2d at 758-59. "Such litigation over timing and the choice of forum would not be conducive to prompt and just resolution of the underlying complaint of discrimination and enforcement of federal employment discrimination laws." *Id.* at 759.

In light of the foregoing analysis, the Court concludes that the Complaint contains sufficient allegations to demonstrate that Krause exhausted her administrative remedies. Accordingly,

Turnberry's motion to dismiss is denied with respect to Counts VI and VII.

II.  Preemption by the IHRA (Counts VIII - X)

The IHRA gives the Illinois Human Rights Commission exclusive jurisdiction  over civil rights violations.  *Naeem v. McKesson Drug Co.*, 444 F.3d 593, 602 (7th Cir. 2006) (*citing* 775 ILCS 5/8-111(C) ("Except as otherwise provided by law, no court of this state shall have jurisdiction over the subject of an alleged civil rights violation other than as set forth in this Act.")).  Under the IHRA, employers are prohibited from engaging in unlawful employment discrimination and sexual harassment. 775 ILCS 5/2-102(A), (D).

Turnberry contends that Krause's common law claims for assault and battery (Count VIII), false imprisonment (Count IX), and IIED (Count X) are preempted by the IHRA because the claims are based on the exact same allegations as those that give rise to her sexual harassment claims and, therefore, the common law claims are "inextricably linked" to the sexual harassment claims. (Turnberry Mem. 8-10.)  Specifically, Turnberry argues that "applying Illinois law, the Northern District has consistently dismissed common law tort claims when they are based on the same allegations as discrimination and harassment claims." (Turnberry Mem. 8.)  In doing so, Turnberry misstates the test governing the IHRA preemption analysis.[6]  The question of whether Krause's common law claims are preempted by the IHRA is not governed by whether the facts that support

---

[6]  In support of its argument, Turnberry relies in part on *Quantock v. Shared Mktg. Services*, *Inc*., 312 F.3d 899 (7th Cir. 2002), where the Seventh Circuit stated that IHRA preemption extends to IIED claims "that depend on allegations of sexual harassment."  312 F.3d at 905.  In *Maksimovic*, the Illinois Supreme Court rejected this standard in favor of the "independent legal duty" standard articulated above.  *See Maksimovic v. Tsogalis*, 687 N.E.2d 21 (Ill. 1997). Thus, "while [t]he Court is cognizant of . . . *Quantock . . .* , the final word on whether an Illinois statute preempts an Illinois claim comes from Illinois' highest court, which in *Maksimovic* rejected an analysis based on the factual relationship between a claim and the provisions of the IHRA in favor of an analysis based on the source of the legal duty underlying the claim."  *Scott-Riley v. Mullins Food Prods.*, No. 04 C 1368, 2004 U.S. Dist. LEXIS 12171, at *7-8 (N.D. Ill. July 7, 2004)**.**

the common law claims could also support a claim for harassment. *See Maksimovic v. Tsogalis*, 687 N.E.2d 21, 23 (Ill. 1997). Rather, the question is whether Krause can prove the elements of the common law claims "independent of any legal duties created by the [IHRA]." *Id.* at 22.

The Illinois Supreme Court has twice addressed the scope of IHRA preemption. First, in *Geise v. Phoenix Co. of Chicago, Inc.*, 639 N.E.2d 1273 (Ill. 1994), the plaintiff alleged that her employer negligently hired and retained a manager who sexually harassed the plaintiff. 639 N.E.2d at 1274. The defendant contended that the state court lacked jurisdiction over the claims because the negligent hiring and retention claims could be construed as "civil rights violations" within the meaning of the IHRA. *Id.* at 1276. The Illinois Supreme Court held that the IHRA preempted plaintiff's claims because they "depend[ed] on the prohibitions against sexual harassment for their viability" and, as such, were "inextricably linked" to the concept of that particular civil rights violation. *Id.* at 1277. Subsequently, in *Maksimovic v. Tsogalis*, 687 N.E.2d 21, 24 (Ill. 1997), the Illinois Supreme Court clarified its previous holding in *Geise* when confronted with the question of whether the plaintiff's common law tort claims for assault, battery, and false imprisonment were "inextricably linked" to her sexual harassment claim. The *Maksimovic* court held that the common law claims were not "inextricably linked" with the claims of sexual harassment because the plaintiff could establish "the necessary elements of each tort independent of any legal duties created by the Act." 687 N.E.2d at 22. Thus, "the IHRA does not preclude courts from exercising jurisdiction over all tort claims factually related to incidents of sexual harassment . . . . [I]f a plaintiff can allege facts sufficient to establish elements of a tort, that tort is not preempted by the IHRA."[7] *Naeem*, 444 F.3d

---

[7] The application of *Maksimovic* by federal courts in this district has led to inconsistent results. *Compare Arnold v. Janssen Pharmaceutica, Inc.*, 215 F. Supp. 2d 951, 961 (N.D. Ill. 2002) ("That extreme and offensive conduct might also constitute sexual harassment . . . does not affect the viability of a tort claim for [intentional infliction of emotional distress]"), *and Spahn v. Int'l Quality & Productivity Ctr.*, 211 F. Supp. 2d 1072, 1075 n.2 (N.D. Ill. 2002)

at 602-03 (*citing Maksimovic*, 687 N.E.2d at 23-24) ("We conclude that a common law tort claim is not inextricably linked with a civil rights violation where a plaintiff can establish the necessary elements of the tort independent of any legal duties created by the [IHRA].").

In this case, as noted above, Krause asserts claims for assault and battery, false imprisonment, and IIED, in addition to her sexual harassment claims. The question presented is whether the common law claims are "inextricably linked" to Krause's claims for civil rights violations. This Court faced a similar issue in *Redman v. Gas City, Ltd.*, No. 06 C 6405, 2007 U.S. Dist. LEXIS 24836, at *4-8 (N.D. Ill. Mar. 21, 2007). Plaintiff alleged sexual harassment and gender discrimination in violation of Title VII, retaliatory discharge, age discrimination in violation of the Age Discrimination in Employment Act, and IIED. 2007 U.S. Dist. LEXIS 24836, at *1-2. The defendant employer contended that the plaintiff's IIED claim was "inextricably linked" to her civil rights claims and, therefore, preempted by the IHRA. *Id.* at *5. Applying the *Maksimovic* test, this Court concluded that "the duty not to intentionally and knowingly inflict severe emotional distress derives from common law, not statutory law." *Id.* at *8. Thus, the plaintiff's IIED claim was not preempted by the IHRA.

Consistent with *Redman*, the Court concludes that, because the underlying duty of an IIED claim derives from common law, not statutory law, Krause's IIED claim is not preempted by the IHRA. *Id.* at *8; *see also Scott-Riley v. Mullins Food Prods.*, No. 04 C 1368, 2004 U.S. Dist. LEXIS 12171, at *7-8 (N.D. Ill. July 7, 2004); *Benitez v. KFC Nat'l Mgmt. Co.*, 714 N.E.2d 1002, 1037 (Ill. App. Ct. 1999). Krause's false imprisonment and assault and battery claims are also not

---

(it is "perfectly clear that the critical analysis focuses on legal duties, not facts), *with Johnson v. Chicago Bd. Of Ed.*, No. 00 C 1800, 2002 WL 1769976, at *4 (N.D. Ill. Aug. 1, 2002) ("[P]laintiff's claim for infliction of emotional distress is supported by the identical factual allegations of her Title VII claims and is therefore preempted.").

preempted by the IHRA, as the underlying legal duties and allegations are not dependant upon the IHRA for legal viability. *See Maksimovic*, 687 N.E.2d at 23-24 ("Assault, battery and false imprisonment existed long before the legislature became interested in sexual harassment and are intended to redress violations of bodily integrity and personal liberty."); *see also Ofoma v. Armour,* No. 97 C 6420, 1998 U.S. Dist. LEXIS 11052, at *12 (N.D. Ill. June 25, 1998).

For the reasons stated above, Krause's assault and battery (Count VIII), false imprisonment (Count IX), and IIED (Count X) are not preempted by the IHRA.

III. *Respondeat Superior* Liability (Counts VIII - X)

Alternatively, Turnberry contends that Krause fails to state a plausible entitlement to relief under the principles of *respondeat superior*. As noted above, Krause asserts three state law claims against Turnberry: assault and battery (Count VIII), false imprisonment (Count IX), and IIED (Count X). Krause bases all three claims on Buttitta's alleged conduct. The underlying allegations include that: (1) Turnberry employed Buttitta and Krause, (Compl. § VIII, ¶¶ 3, 5; Compl. § IX, ¶¶ 3, 5; Compl. § X, ¶¶ 3, 5); (2) Buttitta directly supervised Krause in his capacity with Turnberry, (Compl. § VIII, ¶ 6; Compl. § IX, ¶ 6; Compl. § X, ¶ 6); (3) Buttitta acted on behalf of Turnberry in his management and supervision of Krause, (Compl. § VIII, ¶ 8; Compl. § IX, ¶ 8; Compl. § X, ¶ 8); (4) Buttitta made a series of unwelcome sexual advances, requests for sexual favors, and physical contact to and with Krause, (Compl. § VIII, ¶¶ 9-11; Compl. § IX, ¶¶ 9-11; Compl. § X, ¶¶ 9-11); and (5) upon announcing the termination of her employment with Turnberry, Buttitta pulled Krause into his office against her will, shut the door, and told her she was committing "career suicide." (Compl. § VIII, ¶ 14; Compl. § IX, ¶ 14; Compl. § X, ¶ 22). With respect to the IIED claim, Krause further alleges that Krause reported these incident to various Turnberry employees,

including the General Manager, two assistant Turnberry golf pros, and a ladies' locker room attendant, but that Buttitta continued to engage in the unwelcome conduct. (Compl. § VI, ¶ 14-20.)

Under traditional principles of *respondeat superior*, an employer may be held liable for the torts of its employee if the tort is committed within the scope of employment. *Pyne v. Witmer*, 543 N.E.2d 1304, 1308 (Ill. 1989). The conduct may be "negligent, willful, malicious, or even criminal," as long as it is committed within the scope of employment. *Bagent v. Blessing Care Corp.*, 862 N.E.2d 985, 991 (Ill. 2007) (citing *Wright v. City of Danville,* 675 N.E.2d 110 (Ill. 1996)). Conduct is considered within "the scope of employment," if the conduct: (1) is of the kind the employee is employed to perform; (2) occurs substantially within the authorized time and space limits; and (3) is actuated, at least in part, by a purpose to serve the master. *Id.* at 992. When the motive for the employee's tort is personal and solely for the benefit of the employee, the employer is not subject to liability. *Wright v. City of Danville*, 675 N.E.2d 110, 118 (Ill. 1996)). If, however, the employee acts to further his employer's interests as well as his own interests, the employer may be held liable under the doctrine of *respondent superior*. *Bagent*, 862 N.E.2d at 995. Illinois courts have consistently held that acts of sexual assault and misconduct are outside the scope of employment as a matter of law. *See Deloney v. Bd. of Edu. of Thornton Township*, 666 N.E.2d 792, 797-98 (Ill. App. Ct. 1996) (collecting cases); *see also Deborah K. v. Sperlik*, No. 05 C 628, 2005 U.S. Dist. LEXIS 31179, at *9-10 (N.D. Ill. Nov. 30, 2005); *Graham v. McGrath*, 363 F.Supp.2d 1030, 1034 (S.D. Ill. 2005); *Hayes v. White*, No. 97 C 762, 1998 U.S. Dist. LEXIS 3652 (N.D. Ill. Mar. 23, 1998) ("Illinois courts have held that acts of sexual misconduct are outside the scope of employment as a matter of law."). When the employee's underlying motivation is personal, "it is necessarily

unrelated to his employer's objectives. *Sperlik*, 2005 U.S. Dist. LEXIS 31179, at *9 (*citing Sobieski v. Ispat Island, Inc.*, 413 F.3d 628, 635 (7th Cir. 2005)). In this case, Krause's state law claims are based in large part on Buttitta's alleged sexual misconduct. With respect to the sexual misconduct, there is no indication from the Complaint that Buttitta acted with anything other than personal motivation or that the conduct was the kind Buttitta was employed to perform in his capacity as a Turnberry employee. Thus, to the extent Krause relies on allegations of sexual misconduct to support her assault and battery, IIED, and false imprisonment claims, the claims do not state a plausible entitlement to relief.[8]

This does not end the Court's inquiry, however, because Krause's state law claims are also based on the allegation that upon announcing the termination of her employment with Turnberry, Buttitta pulled Krause into his office against her will, shut the door, and told her she was committing "career suicide." Unlike the allegations of sexual misconduct, the Court cannot conclude that these actions were outside the scope of employment as a matter of law. To the contrary, Krause's allegations state a plausible theory of relief under a theory of *respondeat superior*. Krause alleged that Buttitta worked as a golf pro and in management for Turnberry and that Buttitta supervised Krause on behalf of Turnberry. Buttitta's statement regarding "career suicide," even if motivated

---

[8] Relying on *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998) and *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998), Krause contends that the alleged sexual misconduct falls within the scope of employment as a matter of law because Krause was constructively discharged as a result of an actionable hostile environment created by Buttitta, her supervisor. Krause's reliance on *Ellerth* and *Faragher* is misplaced. In those cases, the Supreme Court held that, in the context of Title VII cases, "[a]n employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee." *Ellerth*, 524 U.S. at 765; *Faragher*, 524 U.S. at 807. Krause cites to no legal authority in support of her position that Illinois courts have applied the *Ellerth/Faragher* principle in the context of common law tort claims. Furthermore, to the extent Krause bases her common law claims on Turnberry's alleged failure to take corrective action, the claims would only be actionable by virtue of the legal duties created by the IHRA and, therefore, would be preempted by the IHRA. *See, e.g., Figueroa v. City of Chicago*, 97 C 8861, 1999 U.S. Dist. LEXIS 3417, at *33-34 (N.D. Ill. Mar. 12, 1999).

in large part by personal animus, may very well have been made in some small part to serve Turnberry's interest.  For instance, Buttitta may have been attempting to eliminate the threat of a potential lawsuit against Turnberry, avert a potential lawsuit against himself, save his own job, counsel an employee whom he previously supervised, or accomplish a number of these objectives. Krause's allegations satisfy the *respondeat superior* element of her state law claims; whether or not Buttitta deviated from the normal scope of employment at the time of the "career suicide" incident is a question better suited for summary judgment.

Thus, the sole question remaining is whether Krause's allegations regarding the "career suicide" incident are sufficient to establish a plausible entitlement to relief for assault and battery, false imprisonment, or IIED.  Turnberry does not challenge whether these allegations are sufficient to state a claim under the three common law theories of relief.  Nevertheless, the Court concludes that, accepting the allegations as true and construing all reasonable inferences in favor of Krause, the Complaint states a plausible entitlement to relief for assault and battery,[9] false imprisonment,[10] or IIED[11].

---

[9] Illinois common law defines battery as "willful touching of the person of another or a successful attempt to commit violence upon the person of another." *Kijonka v. Seitzinger*, 363 F.3d 645, 647 (7th Cir. 2004) (*citing* 720 ILCS 5/12-1(a)). A assault is conduct that puts another in reasonable apprehension of a battery. *See Britamco Underwriters, Inc. v. J.O.C. Enterprises, Inc.*, 623 N.E.2d 1036, 1039 (Ill. App. Ct. 1993).

[10] False imprisonment is defined as "an unreasonable restraint of an individual's liberty against his will caused or procured by the defendant." *Hajawii v. Venture Stores, Inc.*, 125 Ill. App. 3d 22, 465 N.E.2d 573, 576, 80 Ill. Dec. 461 (Ill. App. Ct. 1984). The unlawful restraint may be effected by words alone, physical acts alone, or by both. *See Marcus v. Liebman*, 375 N.E.2d 486, 488 (Ill. App. Ct. 1978).

[11] To state a claim for IIED the plaintiff must show: (1) the defendant's conduct was extreme and outrageous; (2) the defendant either intended to inflict severe emotional distress or knew that there was a high probability that his conduct would do so; and (3) the defendant's conduct actually caused severe emotional distress. *Graham v. Commonwealth Edison Co.*, 742 N.E.2d 858, 866 (Ill. App. Ct. 2000).  "Cases in which intentional infliction of emotional distress has been sufficiently alleged have in fact very frequently involved a defendant who stood in a position of power or authority relative to the plaintiff." *McGrath v. Fahey*, 533 N.E.2d 806, 810 (Ill. 1988) (*citing Milton v. Illinois Bell Telephone Co.*, 427 N.E.2d 829 (Ill. App. Ct. 1981)).

## <u>CONCLUSION AND ORDER</u>

For the foregoing reasons, Defendant Turnberry Country Club's Motion to Dismiss Plaintiff's Complaint is denied.


So ordered.

_____
Virginia M. Kendall, United States District Judge
Northern District of Illinois


Date: April 17, 2008